UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| M. DOE, a minor child by her parents, and KELLY CUTRIGHT, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No. 1:19-cv-01716 |
| USA GYMNASTICS, THE NATIONAL GYMNASTICS FOUNDATION, ROE FOUNDATIONS 1-1000, SAVANNAH METRO, INC., WILLIAM MCCABE, and THE ESTATE OF MARVIN SHARP, SHARP'S GYMNASTICS ACADEMY | ) ) ) ) ) ) ) ) | JURY DEMANDED |
| Defendants. | ) | |

---

## CLASS ACTION COMPLAINT

---

Come now Plaintiffs, M. Doe, a minor child, and Kelly Cutright, and bring the following

action on behalf of themselves and all others who were abused by USA Gymnastics coaches,

officials, employees, agents and volunteers other than Lawrence Nassar.

## I.     INTRODUCTION

In 1994, THE SAN FRANCISCO CHRONICLE published an investigative series into the

rampant child sexual abuse in United States Gymnastics; the series was followed up with the

publication of the book *Little Girls In Pretty Boxes* by Joan Ryan in 1995. Instead of taking steps

to protect athletes from well documented child molesters among their membership, United States

Gymnastics engaged in a systematic cover up designed to protect its brand – it intimidated victims

into silence, while protecting pedophile coaches and officials, including Marvin Sharp, William

McCabe, and at least 52 others known to Plaintiffs' counsel through their work in *Jane Doe v. McCabe,* ST13CV058RT in Effingham County, Georgia [hereinafter the "Effingham Case"]. The efforts of undersigned counsel were the impetus for the INDIANAPOLIS STAR's 2016 exposé on sexual abuse of child athletes in USA Gymnastics ("Out Of Balance")[1]. The resulting media coverage led multiple victims of Larry Nassar to come forward to the news outlet and has ultimately driven USA Gymnastics into bankruptcy. Over 300 girls and young women violated by USA Gymnastics physician Lawrence Nassar and a handful of women abused by other coaches have filed claims against USA Gymnastics in that bankruptcy, which is currently being litigated in the Southern District of Indiana (18-09108-RLM-11). Through their efforts in the Effingham Case, the undersigned counsel have learned of over 50 coaches, officials, volunteers, and administrators that have been accused of inappropriate sexual conduct, including assault and rape of minors, while serving USA Gymnastics in their various capacities. Named Plaintiffs are victims of two such coaches, Marvin Sharp (deceased)[2] and William McCabe, who is currently incarcerated. This lawsuit seeks to protect the claims of the hundreds, if not thousands more, discernable child and adult victims of the at least 50 coaches, officials, employees/agents, and volunteers of USA Gymnastics who were sexually violated by someone other than Larry Nassar[3] while pursuing their passion for the sport of gymnastics .

---

[1]https://www.indystar.com/story/news/investigations/2016/08/04/usa-gymnastics-sex-abuse-protected-coaches/85829732/

[2]https://www.indystar.com/story/news/crime/2015/12/21/indianapolis-gymnastics-coach-marvin-sharpe-died-suffocation/77691840/

[3] The victims of Dr. Nassar have received compensation from Michigan State University, the limited funds of USA Gymnastics and its insurance carriers are the only relief available to named Plaintiffs and the other members of the proposed class.

## II.      JURISDICTION

1.      This Court has jurisdiction over this matter as all Plaintiffs are diverse in citizenship from all Defendants.

2.      This Court has federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367 for the state law claims alleged.

## III.      VENUE

3.      Venue is appropriate in this district because USA Gymnastics has its corporate headquarters in Indianapolis and because some of the Plaintiffs, included named Plaintiff M. Doe, were sexually assaulted in this district.

## IV.      PARTIES

### Plaintiffs

4.      M. Doe is presently a minor child and is a resident of a state other than Indiana. She can be served through her counsel, Saeed and Little, LLP, whose contact information appears below.[4]

5.      Kelly Cutright is a resident of South Carolina, and can be served through her counsel, Saeed and Little, LLP, whose contact information appears below.

### Defendants

6.      Upon information and belief, Defendant USA Gymnastics, Inc. d/b/a USAG ("USAG" or "USA Gymnastics") is, and at all times mentioned herein was, a Texas Corporation, with its principal place of business located in Indianapolis, Indiana. USAG is the National Governing Body for the sport of gymnastics in the United States. USAG can be served through its

---

[4] The name, address, and date of birth of M. Doe will be provided to Defense Counsel and the Court separately.

registered agent at 132 E. Washington Street, Suite 700, Indianapolis, IN 46204. Plaintiffs acknowledge there is a currently a stay in Bankruptcy Court (18-09108-RLM-11) and will seek leave of Court before serving USA Gymnastics in this case.

7.     Defendant National Gymnastics Foundation ("Foundation"), is a 501(c)(3) controlled by Defendant USAG; it can be served at 132 E. Washington Street Indianapolis, Indiana 46204.

8.     Roe Foundations are unknown other corporate entities created by USAG.

9.     Upon information and belief, at all times relevant hereto, Defendant Savannah Metro, Inc. ("Savannah Metro") was a Georgia Corporation, with its principal place of business located in Effingham County, Georgia. Savannah Metro operated as gymnastics facility. Savannah Metro can be served through its registered agent William A. McCabe, Inmate # 12753-021, incarcerated at FCI Fort Dix, Federal Correctional Institution, 5756 Hartford & Pointville Road Fort Dix, NJ 08640.

10.     Upon information and belief, at all times relevant hereto, William A. McCabe ("McCabe") was a citizen and resident of Effingham County, Georgia. McCabe was the owner and operator of Savannah Metro and was a registered coach in "good standing" with USAG. McCabe was a coaching member of USAG and was governed by rules and regulations promulgated by USA Gymnastics. McCabe can be served as Inmate # 12753-021 at FCI Fort Dix, Federal Correctional Institution, 5756 Hartford & Pointville Road Fort Dix, NJ 08640.

11.     The Estate of Marvin Sharp can be served via alias summons.

12.     Sharp's Gymnastics Academy can be served via alias summons.

4

## V.     FACTS

### General Facts Related to Defendants USA Gymnastics
### and National Gymnastics Foundation

13.     Defendant USAG is the National Governing Body for the sport of gymnastics. USAG is responsible for the administration of gymnastics in the United States.

14.     Per the Ted Stevens Amateur Sports Act, (36 U.S.C. § 220501), USAG is exclusively responsible for submitting the roster of coaches, athletes, officials, trainers, and administrators to the United States Olympic Committee to represent the United States in the sport of gymnastics throughout the United States and the rest of the world.

15.     An athlete cannot compete as a member of the U.S. Olympic team or in any other USAG sanctioned event without being a member of USA Gymnastics.

16.     In its capacity as the governing authority, USAG implements, formulates, and enforces rules, policies, and procedures for member coaches, member clubs, and member athletes throughout the United States.

17.     Since 1999 at the latest, the United States Olympic Committee has required USA Gymnastics to carry specific sexual abuse insurance.

18.     USA Gymnastics members, including Plaintiffs, paid membership dues to USA Gymnastics.

19.     Those dues were used, in part, to pay for the specific sexual abuse insurance.

20.     USA Gymnastics exercises a great deal of influence and control over its athlete members.

21.     For example, USA Gymnastics (a) specifies the clothing brands athlete members are permitted to wear in competition, (b) requires all athlete members to submit to random drug

testing, and (c) decides which events athletes are permitted to compete in to remain a member in good standing of USA Gymnastics.

22.     At all times relevant hereto, Savannah Metro and Sharp Gymnastics fielded competition level gymnastics teams that participated in USAG sanctioned meets and competitions pursuant to the rules and procedures of USAG.

23.     Upon information and belief, USAG requires member coaches and athletes to pay membership fees and abide by its policies and procedures.

24.     Upon information and belief, USAG can enforce its policies and procedures by prohibiting participation in sanctioned events and the Olympics, and by banning coaches and athletes from membership in USAG.

25.     The National Gymnastics Foundation was created in 1984, in large part with the proceeds earned by the United States Olympic Committee from the 1984 Los Angeles Olympic Games.

26.     Until 2008, the Foundation operated with reserves of approximately $4,000,000 on an annual basis.[5]

27.     Prior to 2008, the Foundation had annual expenses of less than $250,000.

28.     Through 2017, these expenses have been less than $1,000,000 annually.[6]

29.     The Board of the National Gymnastics Foundation was comprised of USA Gymnastics members and executives.

30.     The board members of USA Gymnastics and the Gymnastics Foundation were often comprised of the same persons, or persons who had recently left one board to join the other.

---

[5]https://usagym.org/PDFs/Forms/Special%20forms/IRS990-2008_ngf.pdf

[6]https://usagym.org/PDFs/Forms/Special%20forms/IRS990-2017_ngf.pdf

31.     However in 2009-10, in response to media coverage given to the epidemic of child sexual abuse in United States Swimming, USA Gymnastics and other National Governing Bodies began pouring large amounts of money into their foundations.

32.     Upon information and belief, USA Gymnastics began funding other, as yet unknown foundations as a response to the sexual abuse in United States Swimming being exposed on ABC's 20/20 news program.

33.     USA Gymnastics, USA Swimming, and other NGBs began excessively funding their foundations to make the NGB – in this case USA Gymnastics – less liquid, due to their awareness of sexual abuse survivors filing law suits against them.

34.     At all relevant times, the Boards of the National Gymnastics Foundation and USA Gymnastics have been composed of largely the same people.

35.     John Hewett, the former Controller/CFO of USA Gymnastics, kept the books for the Foundation from 2008 (if not before) until 2018.

36.     John Hewett was the only member of the Foundation that received more than nominal compensation for his services to Foundation.

37.     In 2017, the Foundation paid John Hewett $140,000 in salary and estimated $21,000 in other compensation.

**<u>Facts Related to the Sexual Assaults and/or Rapes of Named Plaintiffs</u>**

***Facts Related to the Sexual Assault of M. . Doe by Marvin Sharp***

38.     M. Doe is a minor female.

39.     Marvin Sharp was the USA Gymnastics Coach of the Year in 2010.

40.     Marvin Sharp coached on USA Gymnastics' National Team Staff.

41.     Marvin Sharp coached USA Gymnastics Teams in Sports Act[7] protected competitions.

42.     Marvin Sharp coached gymnasts who competed in the Olympic Games.

43.     Marvin Sharp coached athletes who competed for USA Gymnastics in several Sports Act protected competitions.

44.     Marvin Sharp was the coach that USA Gymnastics submitted to the USOC to coach its 2011 Pan American Games Team.

45.     M. Doe began competing and training in gymnastics in 2007 in Cincinnati, Ohio.

46.     In or around 2012, M. Doe's coach resigned from his coaching duties.

47.     From 2013 through 2015, M. Doe competed as both a Level 10 and an elite gymnast.

48.     After her coach resigned, M. Doe sought a new elite level coach.

49.     In or around late 2013, M. Doe moved to Indianapolis to compete for and train with Sharp's Gymnastics Academy.

50.     M. Doe was successful athletically under Marvin Sharp and received national recognition and rankings.

51.     Upon information and belief, by 2005 Marvin Sharp was collecting child pornography.

52.     Marvin Sharp was arrested in Indianapolis, Indiana in 2015 for possession of child pornography.

---

[7] Codified at 36 U.S.C. § 220501.

53.     Marvin Sharp died under suspicious circumstances in the Marion County Jail in September 2015.[8]

54.     Prior to opening a gym on the West side of Indianapolis in 2001,[9] Sharp had coached in Cincinnati and North Carolina.

55.     Prior to 2015, USA Gymnastics had received complaints from athletes, parents, coaches, and others alleging that Marvin Sharp had been sexually inappropriate with young female gymnasts.

56.     USA Gymnastics took no action to investigate the complaints it received about Marvin Sharp.

57.     USA Gymnastics did not warn its members about the complaints it received regarding Sharp.

58.     A former coach of M. Doe, who is also a USA Gymnastics insider,  former leader of USA Gymnastics Women's Elite Program  and a Larry Nassar defender,[10] failed to warn M. Doe or her family of Sharp's program in 2012, 2013, or 2014.

59.     In 2013, M. Doe began receiving physical therapy from Sharp.

60.     Upon information and belief, Sharp repeatedly asked M. Doe if he could take photographs of her wearing different outfits and leotards.

---

[8] https://www.wthr.com/article/jail-guards-charge-former-gymnastics-coach-falsified-records-death-investigation

[9] https://www.indystar.com/story/news/crime/2015/12/21/indianapolis-gymnastics-coach-marvin-sharpe-died-suffocation/77691840/

[10] http://www.espn.com/olympics/story/_/id/24538574/usa-gymnastics-asks-mary-lee-tracy-resign-new-role-elite-development-coordinator

61.    At some point during the photography sessions, and throughout his time as her coach, Sharp physically touched M. Doe.

62.    Sharp sexually assaulted M. Doe.

63.    Upon information and belief, Sharp sexually assaulted numerous other female members of USA Gymnastics.

64.    Upon information and belief Sharp sexually assaulted numerous other female non-members of USA Gymnastics who trained at his gyms in Indiana, Ohio, and North Carolina.

65.    Upon information and belief, Sharp took sexually compromising pictures of numerous minor female athletes who were both members and non-members of USA Gymnastics.

66.    Despite being well aware of Sharp's serial molestations and violations of his athletes, USA Gymnastics has not notified M. of the pending bankruptcy or the upcoming April 29, 2019 claims bar date.

### *Facts Related to the Rape of Kelly Cutright*

67.    At all times relevant hereto, Plaintiff Kelly Cutright was a minor female athlete member of defendants USAG and Savannah Metro; she has since attained the age of majority.

68.    McCabe operated Savannah Metro as a member coach in good standing with USAG in Rincon, Georgia in the County of Effingham.

69.    USAG became aware of sexual misconduct by McCabe as early as 1998 when USAG received information from several different sources about McCabe's inappropriate sexual behavior towards minors and other young women.

70.    In direct contradiction of USAG's own written and oral policies, rules, and regulations, USAG  failed to properly investigate or take any action against McCabe and continued

to allow him to participate in sanctioned events and maintain his status as a coach in good standing with USAG.

71.     Until after his arrest in 2006, USAG's actions of keeping McCabe listed as a coach in "good standing" provided McCabe access to Plaintiff Cutright and other victims and provided McCabe the opportunity to engage in sexually inappropriate conduct with the Ms. Cutright.

72.     Ms. Cutright began training at Savannah Metro when she was approximately 8-years-old.

73.     McCabe became Ms. Cutright's gymnastics coach and held this position of trust and confidence until his arrest in 2006.

74.     In the latter part of 2005, Defendant McCabe contacted Ms. Cutright through email and instant messages. Many of these communications were sexual in nature, including Defendant's request to Ms. Cutright that she massage herself in her private areas.  Defendant also forwarded to her photographs of a female's nude breasts and vagina.

75.     During this period of time, when Ms. Cutright was a USAG member athlete training at Savannah Metro gym, McCabe surreptitiously videotaped her in various states of undress, including the videotaping of her genitals. McCabe imported these videos to his computer and saved them in files on his computer making Ms. Cutright the object of child pornography.

76.     McCabe knowingly and intentionally forwarded from his computer to other persons copies of the nude videos and photographs of Ms. Cutright as the object of child pornography.

77.     Before McCabe committed his acts of sexually inappropriate conduct toward Ms. Cutright, her mother received some undated documents from an anonymous source which contained various allegations about McCabe.

78.     In reliance on USAG's false and misleading representations about McCabe, Ms. Cutright's parents allowed her to continue training with McCabe.

79.     Her reliance on USAG's false and misleading representations that McCabe was a person who could be trusted with children caused and contributed to Ms. Cutright's injuries.

80.     Defendant McCabe's criminal, inappropriate sexual conduct toward Ms. Cutright, including, but not limited to sexual harassment, sexual misconduct, and sexual abuse culminating in inappropriate sexual conduct occurred during the coach/athlete relationship and occurred during practice, meets, exhibitions, and other competitions supervised and/or sanctioned by Savannah Metro and USAG.

### Facts Related to Class

#### *This Class Is Certifiable*

*February 2019 Northern District of Illinois Class Certification*

81.     In February 2019, the Northern District of Illinois certified a class for both male and female members of an Illinois Volleyball Club owned by infamous coach molester Rick Butler (*Mullen v. GLV,* 2019 W 302670, N.D. IL).

82.     The Northern District of Illinois permitted Plaintiffs to proceed as a class on the premise that the athletes would not have joined the club if the club's owners had been transparent about Coach Butler's history of sexual exploitation of athletes.

#### *Numerosity and Discernibility*

83.     The average child molester has more than 150 victims (www.childusa.org). Plaintiffs' counsel has specific information obtained through other litigation against USA Gymnastics regarding accusations against 54 coaches.

84.     Media reports indicate that debtor USA Gymnastics is aware of more coaches, officials, agents, and employees who have raped children and have yet to disclose those coach complaint files to anyone including the US Center For Safe Sport.[11]

85.     Plaintiffs' counsel believes there are hundreds, likely thousands of victims of molestation by USA Gymnastics coaches, agents, officials, and employees who are known to USAG and who are completely unaware that their claims will be forever barred after April 2019.

### Class Allegations

86.     Plaintiffs bring this action individually and pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3) or (c)(4) on behalf of themselves and the following "Nationwide Classes":

(b)(2) Injunction Class

All USAG-controlled female athletes (subject to the USAG's "commercial terms" page or any other contract).

(b)(3) and/or (c)(4) Damage Class

All USAG -governed female athlete (subject to the USAG's "commercial terms" page or any other contract and who (1) participated in USA Gymnastics from 1994 to present and (2) traveled or trained with any USA Gymnastics coach, official, administrator, employee, or volunteer who raped or otherwise sexually assaulted them

87.     The Classes consists of hundreds, if not thousands, of women throughout the U.S., making joinder impracticable, in satisfaction of Fed. R. Civ. P. 23(a)(1).

88.     The exact size of the Class and the identities of the individual members are ascertainable through records maintained by the USOC, the U.S. Center for Safe Sport,  Defendant USA Gymnastics, and others.

---

[11] https://www.usatoday.com/story/sports/olympics/2018/05/16/sexual-abuse-usa-gymnastics-makes-puzzling-decision-keep-case/608051002/

89.     The claims of Plaintiffs are typical of the Classes.

90.     The claims of the Plaintiff and the Classes are based on the same legal theories and arise from the same unlawful pattern and practice of sexual abuse, exploitation, and trafficking of female gymnasts and other athletes; the promotion and cover-up of this misconduct; and the commercial benefits Defendants received engaging in this misconduct.

91.     There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect only individual Class members within the meaning of Fed. R. Civ. P. 23(a)(2), (b)(3), and (c)(4).

92.     Common questions of fact or common questions of law affecting members of the Classes include, but are not limited to, the following:

  a.   Whether Defendants owed a legal duty to the members of the Class under federal and/or state law;

  b.   Whether Defendants' violations of the TVPA were knowing;

  c.   Whether the Defendants engaged in forced labor or services;

  d.   Whether McCabe's, Sharp's and others' patterns of sexual abuse and exploitation was committed within the scope of their commercial arrangements/agency/employment with Defendant United States Gymnastics;

  e.   Whether USA Gymnastics had knowledge of, or was willfully blind to, McCabe's, Sharp's and others sexual and physical misconduct;

  f.   Whether USA Gymnastics facilitated the sexual misconduct;

  g.   Whether USA Gymnastics acted in reckless disregard of the sexual and physical misconduct committed by McCabe, Sharp, and others;

  h.   Whether USA Gymnastics engaged in conduct designed to suppress, cover-up, or "in any way interfere with" complaints or reports regarding the sexual and physical misconduct of McCabe, Sharp, and others;

  i.   Whether USA Gymnastics negligently hired, retained, credentialed or supervised McCabe, Sharp, and others; and

       j.     Whether USA Gymnastics negligently hired, retained, credentialed or supervised McCabe, Sharp, and others.

93.    Absent a class action, most of the members of the Classes would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation, particularly as to liability, in that it conserves the resources of the courts and the litigants and promotes the consistency and efficiency of adjudication.

94.    Plaintiffs will fairly and adequately represent and protect the interests of the Classes. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions, and who have expertise in prosecuting personal injury, sexual abuse, and civil rights cases on behalf of vulnerable victims.

95.    Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other Class members, and they have the financial resources and experience in handling sex abuse cases to do so.

96.    Neither Plaintiffs nor their counsel have any interests adverse to those of the other members of the Classes.

97.    Plaintiffs and the Class will have personal injury damages that are individualized, but those can be managed separately.

## VI.    CLAIMS FOR RELIEF

98.    The Sports Abuse Act of 2017 specifically amends the civil remedy provision in 18 U.S.C. § 2255, which incorporates the Trafficking Victims Protection Act ("TVPA") and a multitude of criminal sexual abuse statutes, with explicit concerns about sex trafficking.

99.    Section 2255 was enacted to allow minor victims of sex trafficking and sexual abuse to file a civil lawsuit in federal district court and seek a wide range of remedies. Section

2255 imposes civil liability against those who commit or benefit from the forced labor, trafficking, and exploitation of minors, especially if those actions include sexual abuse and exploitation.

100.     The Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1589-96, creates civil liability for those who commit or benefit from forced labor or services or sex trafficking and trafficking-related offenses, including those offenses enumerated in 18 U.S.C. §§ 1589, 1590, and 1591. Violations of the TVPA include: forcing someone into labor or sexual services; knowingly benefitting from such forced labor or services; recruiting or transporting a person for labor or services against their will, especially if those actions include sexual abuse; attempting to commit these trafficking offenses; conspiring to commit these trafficking offenses; obstructing or interfering with efforts to enforce the TVPA; and benefitting financially from these offenses.

101.     The TVPA expressly authorizes civil remedies against both the perpetrator and others who knowingly benefit from violations of the TVPA. See 18 U.S.C. § 1595(a).

102.     Each of the Defendants benefitted financially and/or received something of value from the exploitation, forced sexual acts, and forced labor of the Plaintiffs. Under both the TVPA and Section 2255, the Defendants are liable for the following federal causes of action.

## CLAIMS OF NAMED PLAINTIFFS INDIVIDUALLY

### Count 1: Battery
### (M. Doe v. Sharp)

103.     Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

104.     Marvin Sharp did touch M. Doe in a rude, angry, or insolent matter while working as a USA Gymnastics coach.

105.     As a result of Marvin Sharp's battery M. Doe suffered damages in an amount to be determined at trial.

### Count 2:  Negligence
**(M. Doe v. USA Gymnastics, Sharp Gymnastics Academy, The National Gymnastics Foundation, and Roe Foundations)**

106.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

107.    Defendants United States Gymnastics, The National Gymnastics Foundation, Roe Foundations, and Sharp Gymnastics Academy owed Plaintiff a duty to keep her safe while competing, practicing, or training in their member gyms, with their credentialed and endorsed member coaches.

108.    Defendants USA Gymnastics, The National Gymnastics Foundation,  and Sharpe Gymnastics Academy knew that Marvin Shape had been accused of acting inappropriately with young female athletes prior to his violating M.B. Doe.

109.     Defendant USA Gymnastics breached their duty to M.B. Doe when they failed to take any steps to protect M.B. Doe or other female athletes from Marvin Sharp, despite knowing Sharp was a sexual predator.

110.    USA Gymnastics and Sharp Gymnastics Academy breached caused M.B. Doe damages in an amount to be determined at trial.

### Count 3: Forced Labor in Violation of 18 U.S.C. §§ 1589(a), 1595(a), 2225
**(M. Doe v. USA Gymnastics, The National Gymnastics Foundation the Estate of Marvin Sharp, Sharp Gymnastics Academy)**

111.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

112.    M. Doe is authorized to bring this civil claim against Defendants USA Gymnastics, the estate of Marvin Sharp, and Sharp Gymnastics Academy.

113.    In violation of 18 U.S.C. 1589(a) and 1595(a), Defendants Estate of Marvin Sharp

and Sharp Gymnastics Academy knowingly obtained forced sexual service from M. Doe by means of serious harm or threats of serious harm in violation of 18 U.S.C. 1589(a)(2), and through a scheme, plan, or pattern with Defendant USA Gymnastics, Marvin Sharpe intended to cause M. to believe that if she did not perform labor or services, she would suffer serious harm or physical restraint in violation of 1589(a)(4).

114.    In violation of 18 U.S.C. § 1589 and 1595, USA Gymnastics and the other above-named USA Gymnastics-affiliated Defendants (in this Count, "USA Gymnastics"), knowingly benefited from participation in a venture with Marvin Sharpe, knowing, or with reckless disregard of fact, that the venture was engaged in the providing or obtaining of M. Doe's forced labor or services by means of force, threats of force, physical restraint, threats of physical restraint, serious harm or threats of serious harm, and/or a scheme, plan, or pattern intended to cause M. Doe to believe that, if she did not perform such labor or services, she would suffer serious harm or physical restraint. USA Gymnastics also knowingly benefitted from participating in a venture with Marvin Sharpe whom which it knew or should have known was engaging in violations of the TVPA.

115.    USA Gymnastics knew or recklessly disregarded the fact that Marvin Sharpe was obtaining M. Doe's forced labor or sexual services.

116.    Defendant USA Gymnastics knew or should have known the conditions under which Marvin Sharpe was "coaching" M. Doe.

117.    Defendant USA Gymnastics aided and abetted Marvin Sharpe.

118.    As a direct and proximate result of the actions of Defendants, M. Doe has suffered personal injuries, including severe emotional, physical injuries, and economic injuries and these injuries continue.

119.    M. Doe claims damages in an amount to be proven at trial including attorney fees,

injunctive relief and other relief the Court may deem proper.

### Count 4.  Battery
### (Kelly Cutright v. McCabe)

120.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

121.    Defendant McCabe did touch Kelly in a rude, angry, or insolent manner while working as a USA Gymnastics coach.

122.    As a result of McCabe's battery Kelly did suffer injuries in an amount to be determined at trial.

### Count 5: Negligence
### (Kelly Cutright  v. USAG, The National Gymnastics Foundation, Savannah Metro, Inc.)

123.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

124.    Defendants USAG, The National Gymnastics Foundation, and Savannah Metro, owed Ms. Cutright a duty to keep her safe, while competing, practicing, or training in their member gyms, with their credentialed and endorsed member coaches.

125.     Defendants USAG, The National Gymnastics Foundation, and Savannah Metro had actual knowledge that Defendant McCabe had been accused of sexually assaulting young female athletes prior to McCabe's sexual assault of Kelly.

126.    Defendants USAG, The National Gymnastics Foundation, and Savannah Metro, when they collectively failed to take any steps to protect Kelly and other female athletes from McCabe despite knowing that he was a sexual predator.

127.    Defendants USA Gymnastics, the National Gymnastics Foundation, and Savannah Metro

## VII.   DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues and matters so triable.


## VIII.   PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully requests that this Court will:

A.   Enter judgment against Defendants, jointly and severally, in such amounts as will fully and adequately compensate Plaintiffs for the damages they have suffered, in an amount to be determined at trial;

B.   Award Plaintiffs punitive damages against Defendants, jointly and severally, in an amount to be determined by the jury for Defendants' violations of federal law;

C.   Award Plaintiffs pre-judgment and post-judgment interest;

D.   Award Plaintiffs their actual expenses of litigation, including reasonable attorney's fees;

E.   Award Plaintiffs injunctive relief that requires USAG to put in place (and fund) supervision and compliance protocols that actually prevent, uncover, and stop the sexual abuse, exploitation, and trafficking of Team USA's athletes;

F.   Appoint Plaintiffs as class representatives;

G.   Appoint Plaintiffs' counsel as counsel for the class;

H.   Award Plaintiffs such other and further relief as the Court deems just and proper.

Respectfully Submitted,


s/ *Jonathan Little*
Jonathan Little, No. 27421-49
Syed Ali Saeed
Saeed and Little, LLP
#189-133  Market Street
Indianapolis, IN 46202
317-721-9214
jon@sllawfirm.com
ali@sllawfirm.com


W. Brian Cornwell (petition for admission
forthcoming)
Cornwell & Stevens, LLP
317 W. York Street
Savannah. Georgia 31401
912-417-4597
bcornwell@cornwellstevens.com